**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 08-cv-01804-LTB-KLM

I'MNAEDAFT, LTD,

        Plaintiff,

v.

THE INTELLIGENT OFFICE SYSTEM, LLC,
RALPH S. GREGORY, and
GREG BROOKS,

        Defendants.

## NON-PARTY WITNESSES' MOTION FOR PROTECTIVE ORDER

The Intelligent Office franchisees located in Arlington, Virginia; Baltimore, Maryland; Boca Raton, Florida; Coral Gables, Florida; Fairfax, Virginia; Garden City, New York; Henderson (Las Vegas), Nevada; Lakewood, Colorado; Marlton, New Jersey; Melville New York; Miami, Florida; Palm Beach Gardens, Florida; Red Bank, New Jersey; Reston, Virginia; Rockville, Maryland; Sunrise, Florida; Tyson's Corner (Vienna), Virginia; Walnut Creek, California; and Washington, D.C., collectively referred to herein as "The Franchisees," non-party witnesses in this case, by and through their attorneys, Feder Law Firm, move for a protective order concerning subpoenas they received from Plaintiff's counsel at their various business locations, and as grounds therefor state as follows:

### FRCP 26(c) and D.C.COLO.LCivR 7.1.A CERTIFICATE

The undersigned hereby certifies that he has in good faith conferred with counsel for all parties in this case in an effort to resolve the dispute without court action. Specifically, the

undersigned has spoken to Jeffrey Cowman, counsel for Defendants, who stated Defendants do not oppose the relief sought herein. The undersigned has spoken to Thomas W. Sankey, counsel for Plaintiff, who refuses to withdraw or modify the subpoenas.

## FACTUAL BACKGROUND

Each of the Franchisees operates an Intelligent Office franchise pursuant to an agreement with The Intelligent Office System, LLC. Each of the Franchisees received a subpoena bearing the caption of this case at their respective places of business. (Exhibits 1-19.) With one exception, all of the subpoenas name "The Intelligent Office System" as the "person" required to respond.[1] "The Intelligent Office System" is the name of the franchisor, The Intelligent Office System, LLC. The Intelligent Office System, LLC, does not maintain an office at any of the locations identified in the subpoenas. None of the Franchisees operates or does business under the name "The Intelligent Office System" or "The Intelligent Office System, LLC." None of the Franchisees uses the word "System" to describe its business. The word "System" describes the franchisor, not the Franchisees. Each of the Franchisees is party to a contract with The Intelligent Office System, LLC.

Each of the subpoenas received by the Franchisees was issued by Thomas W. Sankey and returnable at a Duane Morris LLP branch office located in the vicinity of the Franchisees' offices. Upon information and belief, Franchisees of The Intelligent Office System LLC with offices which are not located near a Duane Morris office did not receive subpoenas. The subpoena delivered to the Washington DC Franchisee does not set forth a date or time for the

---

[1] The subpoena delivered to the Boca Raton Franchisee names "The Intelligent Office System LLC" as the person required to respond. (Exhibit 3.)

documents to be produced. The subpoena delivered to the Henderson Franchisee is not signed. None of the subpoenas contains Sankey's email address. *See* FRCP 26(g)(1) (all discovery requests must be signed and state signer's address, email address, and telephone number). Each of the subpoenas requires the Franchisees to produce an identical list of 16 separate categories of documents. (Schedule A to Exhibits 1-19.)

## APPLICABLE LAW

Any person from whom discovery is sought may move for a protective order in the court where the action is pending. FRCP 26(c)(1). The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The Court may, for good cause shown, issue an order to protect a person from annoyance, embarrassment, oppression, or undue burden or expense, including, among others, "(A) forbidding the disclosure or discovery; (B) specifying terms, including time and place, for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." FRCP 26(c)(1)(A)-(D). The Court may enter a protective order for good cause shown. FRCP 26(c).

The Court is empowered to limit discovery to "that which is proper and warranted in the circumstances of the case." *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993). "Courts are required to balance the needs for discovery against the burdens imposed when parties are ordered to produce information and materials, and the status of a person or entity as a non-party is a factor which weighs against disclosure." *Echostar Communications v. The News Corp.*, 180 F.R.D. 391, 394 (D.Colo. 1998). *Compare*, *Myers v.*

3

*Mid-west National Life Insurance Company*, 2008 WL 2396762 (D. Colo. 2008, Mix, M.J.) ("Under the circumstances presented by this case, Defendant must satisfy a burden of proof heavier than the ordinary burden imposed by Rule 26, as the motion to compel relates to a non-party.")  An undue burden is identified by looking at factors such as relevance, the need for the documents, the breadth of the subpoena, the time period covered by the subpoena, the particularity with which the documents are described, and the burden imposed. *Flatow v. Islamic Republic of Iran,* 196 F.R.D. 203, 206-07 (D.D.C. 2000).

Rule 26(c) specifically instructs the Court to limit the extent of discovery if justice so requires to protect a witness from annoyance, embarrassment, oppression, or undue burden or expense. *Stagman v. Ryan*, 175 F.3d 986, 993 (7th Cir. 1999). "[S]weeping requests for documents, requiring extensive shifting and analysis by a non-party and constituting a general fishing expedition, will be subject to a motion to quash." *In re Bergeson*, 112 F.R.D. 692, 695 (D.Mont. 1986).  Documents should not be ordered produced unless the Court finds that Plaintiff's need for the documents outweighs the burden and invasion of the Franchisee's businesses.  *Id.*

The signature of an attorney on a discovery request, which includes a subpoena to produce records, constitutes a certification that the attorney has read the request and that to the best of the attorneys knowledge, information, and belief formed after a reasonable inquiry it is: (1) consistent with the Federal Rules of Civil Procedure and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; (2) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and (3) not unreasonable or unduly burdensome or expensive, given the needs

4

of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation. *In re Byrd*, 927 F.2d 1135, 1137 (10th Cir. 1991); FRCP 26(g)(1)(B).

## ARGUMENT

Defendants The Intelligent Office System, LLC, Ralph S. Gregory, and Gregg Brooks have filed a motion for protective order pertaining to the subpoenas delivered to the Franchisees, and the Franchisees join in that motion.

**1. The Subpoenas Are Defective And Service Was Improper Because They Were Not Addressed To The Franchisees But Were Instead Addressed To "The Intelligent Office System."**

A subpoena that does not comply with the requirements of Rule 45 is invalid and cannot be enforced. *Byrd*, 927 F.2d at 1137. Service of subpoenas is governed by Rule 45(b). "Serving a subpoena requires delivering a copy <u>to the named person</u>." FRCP 45(b)(1) (emphasis added). Plaintiff did not properly serve the subpoenas because it did not deliver a copy to the person named in the subpoena. The subpoenas clearly identify "The Intelligent Office <u>System</u>" or "The Intelligent Office <u>System</u> LLC" as the entity named in the subpoenas. Although the Franchisees are licensed to use the name "Intelligent Office," they are not licensed or authorized to use the name "Intelligent Office <u>System</u>." The difference is important because "System" refers to the franchisor. The subpoenas are clearly defective because they contain the name of the wrong witness and it is not clear to whom they were intended to be directed. *See, e.g.*, *Shomon v. Pott*, 1986 WL 2734 *1 (N.D.Ill. 1986) (not reported in F.Supp) ("the subpoena was defective … because it contained the name of the wrong witness"). Because the subpoenas do not comply with the requirements of Rule 45, they are invalid and cannot be enforced. *Byrd*, at 1137.

5

**2. The Franchisees Are Not Parties To The Litigation And The Documents Sought Are More Readily Available From The Intelligent Office System, LLC, Which Is A Party To The Lawsuit.**

Even if Plaintiff had named and served the proper witnesses, a protective order would still be necessary because many of the documents sought are available from the defendant. *See, e.g.*, *Quotron Systems, Inc. v. Automatic Data Processing, Inc.*, 141 F.R.D. 37, 41 (S.D.N.Y. 1992) (witnesses relieved of burden of complying with subpoena duces tecum issued by plaintiff where records were available from defendant).  Rule 45(c) authorizes the Court to quash or modify a subpoena that subjects a person to undue burden.  FRCP 45(c)(3)(A)(iv).  A determination of the subpoena's reasonableness requires the Court to balance the interests served by complying with the subpoena against the interests served by quashing it.  *Echostar Communications*, 180 F.R.D. at 394.  This calls for the Court to consider whether the information is necessary and unavailable from other sources.  *In re Duque*, 134 B.R. 679, 683 (S.D.Fla. 1991).

Many of the documents listed in the subpoenas are more readily from The Intelligent Office System, LLC, which is a party in this litigation.  For example, Paragraph 2 of Schedule A demands production of "all documents and things that describe or refer to any transactions between IOS and either The Intelligent Office, Inc., Ralph S. Gregory, or Greg Brooks."  Each Franchisee received a Uniform Franchise Offering Circular ("UFOC") from the franchisor in which Gregory and Brooks would have been listed and described as executives of the franchisor.  The UFOCs are hundreds of pages long and also contain audited financial statements and other information.  Plaintiff's subpoena would require the Franchisees to produce each UFOC in their possession, consisting of hundreds of pages.

Other requests demand production of the franchisor's restated financials (¶ 3), all documents relating to Area Development Agreement (¶ 5), all audits conducted by the franchisor (¶ 8), the franchisor's invoices (¶ 14), and taxes charged by the franchisor (¶ 15). This information is available from the franchisor. Paragraph 4 asks for all documents that refer to internet marketing fees, a category which would appear in the franchisor's internal financial statements. Paragraph 9 asks for any franchise registration requirements, ignoring the fact that franchisees are not required to file any sort of registration; rather, that burden lies with the franchisor. Paragraph 11 demands "all documents and things that describe or refer to financial statements or royalty reports prepared for or on behalf of [the franchisor] from 2002 to the present." Although it is unclear what Plaintiff is seeking in this request, it clearly asks for the franchisor's documents. Paragraph 16 asks for five separate categories of disclosures made by the franchisor. Clearly, all of this information is more readily available from the franchisor and the Franchisees should not be required to produce it.

### 3. The Actual Purpose Of The Subpoena Appears To Be Harassment Of The Franchisees Rather Than Seeking Information Necessary For The Lawsuit.

Rather than tailoring its document requests and attempting to seek legitimate discovery from the Franchisees in the least intrusive manner possible, Plaintiff has taken a shotgun approach with no apparent purpose other than to harass the Franchisees. Each subpoena requests the identical list of 16 broad categories of documents. Each is signed by the same lawyer, Sankey, and each is returnable to a branch office of his law firm. Sankey did not target all franchisees of The Intelligent Office System, LLC, apparently because his law firm does not have branch offices near the franchisees who did not receive subpoenas. He did not bother to

ascertain the proper names of the Franchisees and made no reference to "franchisee" in the subpoena, but instead named the franchisor as the "named person" in each subpoena. This case apparently involves hotly contested litigation between the franchisor and a former franchisee whose agreement was terminated. The plaintiff's veiled motivation in issuing the subpoenas is to retaliate against the franchisor and cause havoc among the Franchisees. Moreover, because Plaintiff is no longer an Intelligent Office franchisee, it must be treated as a competitor likely to enter into competition with remaining Intelligent Office franchisees. Courts take a dim view of attempts to obtain discovery from competitors. *See Echostar, supra.*

### 4. The Documents Sought Contain Proprietary And Confidential Business Information.

Invasion of the subpoenaed person's business is a factor to be considered in balancing the need for discovery against the burdens imposed. *See Bergeson*, 112 F.R.D. at 695. The information sought in the subpoenas would be invasive to the Franchisees' businesses. For example, Paragraph 1 demands all forms submitted by the Franchisees to the Unites States Postal Service. The Franchisees communications with the Postal Service are none of Plaintiff's business. Paragraph 7 demands all documents that describe or refer to the Franchisees' pricing. This would arguably include all client contracts and all client invoices. In addition to being invasive of the Franchisees' businesses, it is also extremely burdensome. The financial statements and royalty information sought in Paragraph 11 would require the Franchisees to reveal the amount of money they made and other personal and confidential business information. Paragraph 12 demands production of documents showing all revenues of each Franchisee for the last seven years. It is nobody's business – least of all Plaintiff's – how much money the

Franchisees may or may not have made. Paragraph 13 vaguely demands all documents "that describe or refer to any dispute" between the Franchisees and the franchisor or any other franchisee. The term "dispute" is not defined, and this is nothing more than an attempt by Plaintiff to dig up dirt against the franchisor and Franchisees. The Franchisees have no interest in Plaintiff's fight, and Plaintiff has no business in their information.

## 5. It Would Be Oppressive And Unduly Burdensome For The Franchisees To Have To Produce All Of The Documents Requested.

The descriptions of many of the categories are vague and overbroad, particularly in light of the fact that every subpoena is addressed to the franchisor, not a franchisee. Most of the categories described in Schedule A set forth no timeframes and demand "all documents" in the named person's possession pertaining to a particular subject. The requirement of providing "all documents" is intimidating and burdensome on its face, and drags the Franchisees into a fight they do not wish to join. For example, Paragraph 7 of Schedule A seeks all documents that refer to or describe the prices charged by the Franchisees. This would include all invoices ever sent to any client from the time the Franchisees started their businesses. Paragraph 10 demands all documents that "describe or refer to Ron Clarke" or the plaintiff. All correspondence or memos sent by the franchisor to the franchisees since Plaintiff became a franchisee would "refer to" Ron Clarke and Plaintiff because they would be included in the distribution list. Paragraph 12 seeks all documents showing revenues for a seven year period, which would include royalty reports, financial statements, and income tax returns. It would take significant time and energy to respond to these demands, and would sap the significant energies required to run the

Franchisees' businesses. The oppressiveness and burden placed on the Franchisees significantly outweighs Plaintiff's need for these documents.

### 6. The Documents Sought Are Not Relevant To The Dispute.

This dispute is between one franchisee and the franchisor. Documents sought from the Franchisees are not relevant to that dispute, or tangential at best. There is absolutely no justification for Plaintiff's attempts to overburden individual business owners.

### 7. There Is No Indication That The Franchisees Will Be Compensated For The Time And Effort To Produce The Documentation Requested.

Compiling documents is a time consuming process particularly were, as here, the document request contains broad categories most of which contain no time limitations or constraints. Unless a protective order is entered, the Franchisees will likely be required to have both staff and owners alike reviewing archived files. Plaintiff has made no indication it would be willing to pay for the time of the Franchisees, their owners, and their staffs.

### 8. There Is Insufficient Time To Produce The Documentation.

Even if the reasons set forth above did not justify the entry of a protective order, relief is necessary because the Franchisees were not given sufficient time to gather the documents in light of the overwhelming range of information sought. Much of the documentation sought, assuming it can be located, would likely be in offsite storage. Nevertheless, the subpoenas were all returnable in less than 14 days after service.

## CONCLUSION

Plaintiff's attorneys are fishing for information with little or no relevance using the largest net possible without regard to the burdens being imposed. It also appears that Plaintiff

and its principal desire to retaliate against the franchise system he was once a part of through the issuance of intimidating, overbroad, and burdensome subpoenas.  The Franchisees respectfully request the Court to quash the subpoenas in their entirety.

DATED this 26th day of February, 2009.

Respectfully submitted,

FEDER LAW FIRM

*/s/ Steven M. Feder*

Steven M. Feder #14991
730 – 17th Street, Suite 550
Denver, Colorado  80202
Telephone:  (303) 221-5599

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2009, I electronically filed the foregoing Non-party Witnesses' Motion for Protective Order with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- Russell Brandon Bundren:  rbbundren@duanemorris.com, wkhines@duanemorris.com
- Sven C. Collins:  sven.collins@hro.com, amy.mercier@hro.com
- Thomas W. Sankey:  twsankey@duanemorris.com, wkhines@duanemorris.com
- Jeffrey J. Cowman:  cowmanj@ballardspahr.com

*/s/ Steven M. Feder*

11