IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01804-LTB-KLM

I'MNAEDAFT, LTD.,

    Plaintiff,

v.

THE INTELLIGENT OFFICE SYSTEM, LLC,
RALPH S. GREGORY, and
GREG BROOKS,

    Defendants/Counterclaimants,

and

THE INTELLIGENT OFFICE SYSTEM, LLC,

    Third-Party Plaintiff,

v.

RONALD CLARKE,

    Third-Party Defendant.
_____

**ORDER DENYING MOTION TO ENJOIN INTERFERENCE WITH SUBPOENAS**
_____

This matter is before the Court on **Plaintiff's Motion for Order Enjoining Defendants From Further Interference With Subpoenas Issued by Plaintiff and From Further Contact With Witnesses Concerning Compliance With the Subpoenas Served by Plaintiff During the Pendency of this Action** [Docket No. 67; Filed February 24, 2009] (the "Motion"). The Court has reviewed the Motion, Defendants' Response [Docket No. 99;

Filed March 16, 2009] and Plaintiff's Reply [Docket No. 108; Filed March 24, 2009]. For the reasons set forth below, IT IS HEREBY **ORDERED** that the Motion is **DENIED.**

## I.  Factual Background

This lawsuit involves a dispute over a franchise.  Plaintiff I'mnaedaft, Ltd. ("Plaintiff") is a former franchisee of Defendant The Intelligent Office System, L.L.C. ("IOS").  In general, Plaintiff claims that Defendants breached the franchise agreement and tortiously interfered with Plaintiff's business. *Motion* [#67] at 2-3.

According to Plaintiff, "the relationship between the parties has, by all accounts, been rocky since its inception." *Id.* at 2.  Based on the pleadings filed by the parties with respect to discovery disputes, the relationship between their counsel is even worse.  In late February of this year, Plaintiff served subpoenas on twenty-six third parties (including twenty-five of IOS' approximately forty franchisees) "in an effort to obtain documentary and testimonial evidence to support its claims and defenses and to contradict Defendants' claims and defenses." *Id.* at 3.  The subpoenas seek production of voluminous business documents.[1]  In response, IOS principals sent four emails to the Franchisees. [Docket Nos. 67-2, 67-3, 67-4, 67-5].  In general, those emails informed the Franchisees that Defendants' counsel would review the subpoenas, that responses to the subpoenas were due in fourteen days, that the court had ruled that the Franchisees or their attorneys would have to seek protective orders relating to the subpoenas themselves, that "it may be more

---

[1] For example, the subpoenas seek "all documents" regarding prices charged by the entities served with the subpoena (the "Franchisees"), all audits of the Franchisees, all franchise regulations in the Franchisees' states, all documents regarding Plaintiff or its principal, all documents showing total revenues of the Franchisees, all invoices received from IOS, all documents regarding taxes charged by IOS, all documents regarding disputes between IOS and any franchisee, and a variety of other documents. [Docket No. 99-2].

2

logical, more economical and efficient to have a single attorney represent all of you in addressing those issues [regarding the alleged confidential nature of the documents sought as well as the burden of responding to the subpoenas] with the Court, if that is your desire. Denver attorney, Steven Feder, is well versed with Intelligent office and . . . has indicated a willingness to represent all of you in responding to the subpoena[s]. . . ," that the Franchisees must take "prompt steps" to respond to the subpoenas, and that Mr. Feder would contact those who agreed to his representation. [Docket Nos. 67-2, 67-3, 67-4, 67-5]. Mr. Feder apparently represents Defendant Ralph S. Gregory, IOS's President, "in a hard-fought arbitration that Mr. Gregory has against a former business partner who sold all of the Intelligent Office franchises," and is counsel to Mr. Gregory's accountant, upon whom a subpoena was also served. *Motion* [#67] at 6-7. The emails prompted the filing of the Motion.

## II.  Arguments

Plaintiff contends that the emails amount to witness tampering, in violation of federal statutes. *Id.* at 7-8. Plaintiff seeks "a no contact order against Defendants, preventing them from contacting parties under subpoena with respect to this action." *Id.* at 9. Plaintiff further requests that the Court "disqualify attorney Feder, who is, by virtue of Defendants' own admission nothing more than a puppet in Defendants' scheme to destroy Plaintiff's business, from representing the third parties subpoenaed by Plaintiff." *Reply* [#108] at 4-5.

Defendants contend that the subpoenas are impermissibly broad, and that the emails were simply IOS's "reasonable steps to ensure that its franchisees, who should be innocent bystanders to this dispute but instead have become victims, receive appropriate legal representation." *Response* [#99] at 3. Defendants further contend that IOS

possesses "virtually all of the information sought through the subpoenas," and that by choosing not to compel production of the documents from IOS, Plaintiff "purposefully subjected Defendants to annoyance and embarrassment and imposed upon [IOS's] franchisees the oppressive and undue burden and expense of producing the same documents from their files." *Id.,* at 4.  Defendants assert that a "no-contact" order "would be inappropriate and highly prejudicial," because of the on-going business relationship between Defendants and the Franchisees and the possibility that some of the Franchisees may be witnesses at trial.  *Id.*

### III.  Analysis

It is axiomatic that entry of an order enjoining interference with a subpoena is only proper when it is shown that actual interference has occurred.  "Interfere" means "to create a hindrance or obstacle."  *The American Heritage Dictionary of the English Language* 913 (4th ed. 2000).  In this case, Plaintiff not only fails to demonstrate that any "witness tampering" has occurred, but also fails to show any actual "interference" with proper execution of its subpoenas to third parties.

The emails sent to the Franchisees by IOS officials fail to demonstrate witness tampering. Indeed, for purposes of criminal liability under applicable federal statutes (*e.g.,* 18 U.S.C. § 1512), witness tampering requires something other than non-coercive, non-deceptive conduct. *United States v. Kulczyk,* 931 F.2d 542, 546 (9th Cir. 1991).  Here, there is no substantiated allegation of coercive or deceptive conduct by Defendants. Moreover, in the case relied upon by Plaintiff, the defendant was convicted of attempting to obstruct a grand jury investigation by controlling a subpoenaed witness' participation in the grand jury proceedings form the moment when the subpoena was served, creating

false documents pertaining to the subpoenaed witness, attempting to orchestrate the subpoenaed witness' testimony to the grand jury by coaching him through the use of notes and during telephone conversations, and making misrepresentations to government investigators.  *United States v. Mintmire*, 507 F.3d 1273, 1290 (11th Cir. 2007).  Plaintiff's allegations against Defendants here are so manifestly different as to render the *Mintmire* case inapplicable.

Plaintiff also fails to demonstrate any sort of interference with the subpoenas by Defendants.  Indeed, the only direct action taken by Defendants in response to the subpoenas was sending the emails to the Franchisees.  That conduct, in itself, created neither a hindrance nor an obstacle to execution of the subpoenas.  Moreover, the contents of the emails did not interfere with the subpoenas either.  The information provided in the emails simply allowed the Franchisees to make their own decisions about whether to hire an attorney to respond to the subpoenas, and provided the name of one attorney who could represent them.  The emails did not advocate non-compliance with the subpoenas, suggest methods for delaying or failing to comply, or provide tools for non-compliance.  They merely assisted the Franchisees in obtaining what they clearly had a legal right to obtain – counsel to represent them in responding.  Under these circumstances, there is no  basis for entry of an order enjoining Defendants' conduct.

Likewise, entry of a "no-contact" order is not appropriate, given the on-going business relationship between Defendants and the Franchisees and the possibility that certain of the Franchisees may be witnesses in the case.

Finally, Plaintiff's suggestion that the Court "disqualify" Mr. Feder from representing the Franchisees is based on conclusory allegations without evidentiary support.  As the

moving party, Plaintiff bears the burden of establishing the grounds for disqualification. *World Youth Day, Inc. v. Famous Artists Merchandising Exchange, Inc.,* 866 F.Supp. 1297, 1299 (D. Colo. 1994). "The party seeking disqualification . . . must provide the court with specific facts to show that disqualification is necessary and he cannot rely on speculation or conjecture." *Funplex Partnership v. Federal Deposit Ins. Corp.*, 19 F.Supp.2d 1201, 1206 (D. Colo. 1998). No such showing has been made. In short, Plaintiff seeks relief which these circumstances simply do not merit.

                                      BY THE COURT:

                                      /s/ Kristen L. Mix
                                      United States Magistrate Judge

Dated: April 15, 2009