IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  08-cv-01804-LTB-KLM

I'MNAEDAFT, LTD.,

    Plaintiff,

v.

THE INTELLIGENT OFFICE SYSTEM, LLC,
RALPH S. GREGORY, and
GREG BROOKS,

    Defendants/Counterclaimants,

and

THE INTELLIGENT OFFICE SYSTEM, LLC,

    Third-Party Plaintiff,

v.

RONALD CLARKE,

    Third-Party Defendant.
_____

# ORDER
_____

This matter is before the Court on several discovery motions: **Defendants' Motion for Protective Order** [Docket No. 71; Filed February 24, 2009] ("Motion No. 71"), **Non-Party Witnesses' Motion for Protective Order** [Docket No. 76; Filed February 27, 2009] ("Motion No. 76") and **Plaintiff's Motion to Compel Responses to Discovery** [Docket No. 78; Filed February 27, 2009] ("Motion No. 78").  The Court has reviewed the briefing filed

by the parties with respect to each motion, located at Docket Nos. 102, 105, 112, 116, 118, and 119, the entire case file and applicable case law and is fully advised in the premises. For the reasons set forth below, Motion No.71 is **DENIED**, Motion No. 76 is **GRANTED in part and DENIED in part**, and Motion No. 78 is **GRANTED in part and DENIED in part.**

## I. Factual Background

This lawsuit involves a dispute over a franchise. Plaintiff I'mnaedaft, Ltd. ("Plaintiff") is a former franchisee of Defendant The Intelligent Office System, L.L.C. ("IOS"). In general, Plaintiff claims that Defendants breached the parties' franchise agreement and tortiously interfered with Plaintiff's business. *Motion* [#67] at 2-3. Third-Party Defendant Ronald Clarke is the President of Plaintiff. *Defendant's Counterclaim and Third Party Complaint* [Docket No. 28; Filed December 17, 2008] at 2. Defendant Ralph S. Gregory is the President of IOS. *First Amended Complaint* [Docket No. 22; Filed December 9, 2008] at 8. Defendant Greg Brooks is the Director of Operations of IOS. *Complaint* [Docket No. 1; Filed August 25, 2008] at 2.

Plaintiff has filed four complaints in this action. The most recent, Plaintiff's Fourth Amended Complaint, was accepted for filing on May 12, 2009 [Docket No. 79], and filed under seal on May 26, 2009 [Docket No. 137], after the pending motions were fully briefed. The Fourth Amended Complaint adds additional misrepresentation allegations against IOS and adds a claim against a new party, The Intelligent Office, Inc. (TIO"), based on piercing the corporate veil. The Fourth Amended Complaint contains numerous factual allegations. Those related to the disputes at issue here are discussed below.

2

### A.   Factual Allegations Relating to CMRA Regulations

As alleged by Plaintiff, IOS is in the business of selling franchises which offer businesses and individuals "advanced telecommunications and office support systems," including virtual office services, geographically non-specific telecommunication services, on- and off-site reception and secretarial services, office technology, non-dedicated conference rooms and dedicated or non-dedicated office space. *Fourth Amended Complaint* [#137] at ¶ 8.  Plaintiff asserts that it paid IOS $96,000 to buy the franchise and expansion rights in Houston, Texas and the surrounding area.  *Id.* at ¶ 15.

Plaintiff alleges that among other improper conduct, IOS first disclosed to Plaintiff "multiple, discrete Federal regulations regarding commercial mail receiving agencies ('CMRA')" two months after the Franchise Agreement was signed.  *Id.* at ¶ 50.  Plaintiff asserts that prior to signing a lease for a franchise location, it raised concerns with IOS about compliance with the CMRA, but IOS and its agents assured Plaintiff that it could "avoid compliance with the CMRA."  *Id.* at  ¶¶ 51, 55. Plaintiff further alleges that it bought mailboxes, built space out to accommodate the mailboxes, and offered "five of IOS' sponsored packages" for purchase by customers. *Id.* at ¶¶ 58, 59.  Plaintiff asserts that after doing so, it "realized that two of these packages violated the CMRA regulations," and discontinued them.  Shortly thereafter, Plaintiff avers that it "stopped promoting sales of any services deemed to be CMRA vulnerable."   *Id.* at ¶ 59.   Plaintiff contends that IOS ultimately issued new instructions to franchisees about the CMRA regulations and "provided amended contracts for use with clients when the CMRA [sic] was implicated. The new contracts forced franchisees to provide additional services, free of charge, for clients who use mail address services."  *Id.* at ¶¶ 62, 63.  As a result, Plaintiff avers that it "has

3

suffered substantial losses and has not received the benefit of its bargain." *Id.* at ¶ 64.

### B. Factual Allegations Relating to Other Franchisees

Plaintiff makes a variety of allegations related to Defendants' alleged treatment of other IOS franchisees, some of which Plaintiff alleges is preferential. For example, Plaintiff avers that "the vast majority of [IOS]' franchisees are currently violating the CMRA regulations with full knowledge, cooperation and encouragement by [IOS]." *Id.* at ¶ 61. Plaintiff further asserts that IOS declared it to be in default of a particular section of the Franchise Agreement because Plaintiff had failed to develop additional franchises within timeframes specified in the parties' Area Development Agreement. According to Plaintiff, several other franchisees have failed to develop additional franchises within the timelines set forth in their respective area agreements but IOS has not enforced that provision of their respective franchise agreements." *Id.* at ¶ 77, 85. Plaintiff further asserts that IOS is "selectively enforcing the advertising and marketing requirements" specified in its identical franchise agreements. *Id.* at ¶ 48. Plaintiff also alleges that IOS is selectively enforcing payment of "internet fees." *Id.* at ¶ 69.

### C. Factual Allegations Relating to IOS' Alleged Failure to Disclose Information

Plaintiff asserts that Defendants have failed to disclose financial and other information which was critical to Plaintiff's decision-making process about purchasing a franchise and the continued operation of the franchise. More specifically, Plaintiff alleges that IOS untimely disclosed the existence of CMRA regulations, failed to disclose its advice to other franchisees that they "violate federal laws in order to circumvent CMRA regulations," and failed to disclose "that a material aspect of the franchise business that it

promoted violated the CMRA regulations. " *Id.* at ¶¶ 50, 54, 64.

Plaintiff also asserts a hodgepodge of other allegations relating, in general, to IOS' alleged failure to disclose needed information. For example, Plaintiff asserts that IOS failed to disclose that their broker worked on a commission basis and that he was involved in a bankruptcy involving a franchise. *Id.* at ¶¶ 17-20. Plaintiff asserts that IOS failed to disclose that it had brought a civil action against a former employee for stealing IOS' intellectual property. *Id.* at ¶¶ 21, 22. Further, Plaintiff asserts that IOS failed to disclose that it pays management fees to related entities and to TIO and Defendant Gregory. *Id.* at ¶¶ 34, 37.

Plaintiff essentially asserts that IOS failed to disclose that it "took inconsistent positions [on the company's financial statements] from year to year concerning fees received for additional franchise offices." *Id.* at ¶ 30. Plaintiff contends that IOS failed to provide accurate and complete financial statements to it. *Id.* at ¶ 26. Finally, Plaintiff contends that IOS "failed to disclose transactions it has consummated with related entities owned and operated by Defendant Gregory . . .,, [and] the nature and extent of Gregory's role in [IOS and IOS, Inc.]." *Id.* at ¶¶ 32,41.

### D. Factual Allegations Regarding Piercing the Corporate Veil

The Fourth Amended Complaint adds a twelfth claim for relief alleging that TIO is a company organized by Defendant Gregory, who owns four IOS franchises**.** *Id.* at ¶ 175. Plaintiff asserts that IOS has no employees and is managed by TIO, and that IOS pays a "management fee" to TIO. *Id.* at ¶ 176. According to Plaintiff, all the revenue generated by IOS franchises goes to Defendant Gregory personally. *Id.* at ¶ 178. Plaintiffs assert that

Defendant Gregory "has confusedly intermingled corporate and personal assets" and made the corporate entities "mere instrumentalities for the transaction of his own affairs." *Id.* at ¶¶180, 181. Therefore, Plaintiff asserts that the court should "disregard the corporate form" of IOS and TIO and enter judgment against Defendant Gregory. *Id.* at ¶ 184.

## II. Procedural Background

The Fourth Amended Complaint asserts the following twelve claims for relief: (1) Plaintiff was fraudulently induced into entering into a Franchise Agreement with IOS because Defendants failed to disclose CMRA regulations, failed to consistently report their financial position and to provide accurate financial information, and failed to disclose that the mail services contemplated by the Franchise Agreement violated CMRA regulations; (2) fraud; (3) negligent misrepresentation; (4) Defendants conspired to cause Plaintiff to enter into the Franchise and Area Agreements and to continue to finance the Houston franchise; (5) breach of the Franchise Agreement; (6) breach of the covenant of good faith and fair dealing in the Franchise Agreement; (7) tortious interference with prospective business relationship; (8) violation of the Colorado Consumer Protection Act; (9) injunctive relief; (10) declaratory judgment; (11) rescission; and (12) alter ego/piercing the corporate veil.

In December of 2008, Plaintiff served its First Set of Interrogatories and First Set of Requests for Production of Documents on Defendants. Defendants responded in January of 2009. In late February of this year, Plaintiff served subpoenas on twenty-six third parties, (including twenty-five of IOS' approximately forty franchisees) "in an effort to obtain documentary and testimonial evidence to support its claims and defenses and to contradict

Defendants' claims and defenses." *Motion for Order Enjoining Defendants From Further Interference With Subpoenas* [Docket No. 67], at 3 (the "Third-Party Subpoenas"). The Third-Party Subpoenas seek production of voluminous business documents. The present motions concern Defendants' written discovery responses and the Third-Party Subpoenas.

### III.  Defendants' Motion for Protective Order

Defendants ask the Court to quash the Third-Party Subpoenas or to limit their scope. I have reviewed Defendants' Motion [#71], Plaintiff's Opposition to Defendants' Motion for Protective Order and Non-Party Witnesses' Motion for Protective Order [# 102], Plaintiffs' Supplemental Opposition to Defendants' Motion for Protective Order and Non-Party Witnesses' Motion for Protective Order [#112], Defendants' Reply in Support of Motion for Protective Order [#116], the entire case file and the relevant law. For the reasons stated below, Defendants' Motion [#71] is **DENIED**.

**A. Arguments**

As an initial matter, Defendants assert that they have standing to obtain a protective order on the behalf of third-parties who were served with the subpoena. *Motion* [#71] at 5. Defendants argue that:

> [t]he multiple subpoenas served on IOS' franchisees have significantly upset the franchise system and have lead to complaints by franchisess to IOS that they should not have to bear the undue burden or expense of producing their personal documents as a result of Plaintiff's dispute with IOS. Predictably, the franchisees' complaints have led to substantial annoyance and embarrassment to IOS and [Defendant] Gregory.

*Id.*

Defendants object to production of the documents sought from the franchisees on the grounds of relevance, the burden of production, and Plaintiff's allegedly improper

7

motives of harassment and annoyance of the Defendants' franchises. *Id.* at 6-8. Defendants also state that the tax returns and financial statements sought from Defendants' accountant, Arrone Appel, are protected by the accountant-client privilege recognized under Colorado law. *Id.* at 8.

### B. Analysis

I previously ruled, at a telephone hearing on February 17, 2009, that Defendants lacked standing to seek a protective order relating to the Third-Party Subpoenas [Docket #64]. In the Motion, Defendants cite cases from other jurisdictions which hold that a party has standing to seek a protective order on behalf of a third party. *See e.g. Firetrace USA, LLC v. Jesclard*, No. CV-07-2001, 2008 WL 5146691, at * 2 (D. Ariz. Dec. 8, 2008); *United States v. Operation Rescue*, 112 F.Supp.2d 696, 705 (S.D. Ohio 1999). However, the rule in this district is that a party has no standing to quash a subpoena served on a third party, except as to claims of privilege or upon a showing that a privacy issue is implicated. *Mona Vie, Inc. v. Amway Corp.*, No. 08-cv-02464-WDM-KLM, 2009 WL 524938, at *2 (D. Colo. Mar. 2, 2009); *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997); *Broadcort Capital Corp. v. Flagler*, 149 F.R.D. 626, 628 (D. Colo. 1993).

The only privacy or privilege issue asserted by Defendants is the accountant-client privilege regarding the tax returns and financial statements sought from one of the third parties upon whom a subpoena was served, accountant Arrone Appel. Colorado law recognizes an accountant-client privilege. *See* Colo. Rev. Stat. § 13-90-107(a)(1)(f) (2008). The party resisting discovery on grounds of privilege bears the burden of coming forward with facts that would sustain the claimed privilege. *See Resolution Trust Corp. v. Heiserman*, 151 F.R.D. 367, 373 (D. Colo. 1993) ("[t]he burden of proving the attorney-

client privilege rests on the party raising that privilege"). The party withholding information on the basis of privilege must make a clear showing that the asserted privilege applies and must establish all elements of the privilege. *National Union Fire Ins. Co. of Pittsburgh v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D. Kan. 1994). *See also* Fed. R. Civ. P. 26(b)(5) (the party claiming privilege must present sufficient information to permit the opposing party to assess the applicability of the privilege).

Defendants have not seriously attempted to show that the privilege applies. They primarily object to the subpoena served on Mr. Appel because they claim to have already produced the documents in his possession and, therefore, assert that the subpoena is "unreasonably cumulative and duplicative." *Motion* [#71] at 8. If Defendants have already produced these documents, then the privilege has been waived. *See Zepter v. Dragisic*, 237 F.R.D. 185, 189 (N.D. Ill. 2006)(accountant-client privilege does not extend to matters disclosed to third parties); *In re Hillsborough Holdings Corp.*, 132 B.R. 478, 482 (M.D. Fla. 1991)(accountant-client privilege waived where confidentiality of documents not preserved); *see also In re: M&L Business Machine Co., Inc.*, 161 B.R. 689, 693 (D. Colo. 1993)("Generally, the attorney-client privilege is lost if the substance of the confidential communication is disclosed to a third party, even inadvertently"); *Sedillos v. Board of Education of School Dist. No. 1*, 313 F.Supp.2d 1091, 1093 (D. Colo. 2004)("the attorney-client privilege can be waived by [a]ny voluntary disclosure by the client of an otherwise privileged confidential communication") (citations omitted). Because Defendants have not made a serious claim of privilege and have made no showing that a privacy issue is implicated, under applicable precedent from this district, Defendants lack standing to challenge the Third-Party Subpoenas. Motion No. 71 is **denied**.

### IV. Non-Party Witnesses' Motion for Protective Order

The franchisees upon whom the Third-Party Subpoenas were served also ask that the Court quash or limit them. I have reviewed the Non-Party Witnesses' Motion [#76], their Supplement to Motion [#83], their Second Supplement to Motion [#94], Plaintiff's Opposition [#102], Plaintiff's Supplemental Opposition [#112], the Reply in Support of Motion for Protective Order [#116], the entire case file and the relevant law. For the reasons set forth below, the Motion is **GRANTED IN PART AND DENIED IN PART.**

#### A.  Arguments

The non-party franchisees upon whom the subpoenas were served object to them on the basis of both form and substance. For reasons of judicial economy, the Court chooses to address the substantive issues. In general, the franchisees assert that the documents sought are more readily available from Defendant IOS, the subpoenas were issued for the improper purpose of harassing the franchisees, the subpoenas seek confidential and proprietary information, the subpoenas are unduly burdensome, the documents sought are not relevant, Plaintiff has failed to offer to compensate the franchisees for their time and effort in responding, and Plaintiff provided inadequate time to respond. *Motion* [#76] at 1-10.

Plaintiff addresses the relevance objection by asserting that the documents sought relate to whether Defendants disclosed material facts to the franchisees before they entered into their Franchise Agreements. *Opposition* [#102] at 3. In addition, Plaintiff asserts that its Franchise Agreement with Defendant IOS is ambiguous, and that the documents will demonstrate Defendant IOS's conduct in enforcing the agreements with

other franchisors, which is relevant to establishing the intent of the parties. *Id.*

### B.     Analysis

Plaintiff's arguments are largely unpersuasive. The Third-Party Subpoenas seek documents held by franchisees other than Plaintiff. Such documents are not likely to lead to the discovery of admissible evidence relating to Plaintiff's fraud or other tort claims against Defendants, as those claims allege conduct specifically directed by Defendants at Plaintiff, without involvement of the other franchisees. *Fourth Amended Complaint* [#137] at ¶¶ 110-117, 119-123. *See Serina v. Albertson's*, 128 F.R.D. 290, 292 (M.D. Fla. 1989)(defendant's treatment of other employees irrelevant to fraud claim); *Palumbo v. Shulman*, No. 97CIV.4314, 1998 WL 436367, at *5 (S.D.N.Y. July 27, 1998) (no discovery permitted where plaintiffs allege pattern of deception and misrepresentation with non-parties); *McHan v. Grandbouche*, 99 F.R.D. 260, 266 (D. Kan. 1983)(fraud claim raises issues that are personal to individual plaintiff). Therefore, the documents sought by Plaintiff can only conceivably be relevant to its contract-based claims against Defendants for preferential treatment of other franchisees by means of selectively enforcing terms of the Franchise Agreements. Even assuming such a theory passes legal muster, which I doubt,[1] the documents sought far exceed any that would be reasonably likely to provide admissible evidence about the preferential treatment alleged by Plaintiff in Claim 5. *See Regan-Touhy*

---

[1] Applicable case precedent does not appear to support such a theory. Simply stated, A enters into identical contracts with B and C. A's failure to enforce B's contractual obligations does not result in a breach of A's contract with C. A franchisor's treatment of other franchisees has repeatedly been held to be irrelevant to a breach of contract claim brought by another franchisee. *The Original Great American Chocolate Chip Co., Inc. v. Rivervalley Cookies, Ltd.*, 970 F.2d 273, 279 (7th Cir. 1992); *Zeidler v. A&W Restaurants, Inc.*, No. 99 C 2591, 2001 WL 62571, at *4 (N.D. Ill. Jan. 25, 2001);s*ee also Matthews v. George Weston Bakeries Distribution, Inc.*, No. 06-14875-BC, 2007 WL 2952155, at *4 (E.D. Mich. Oct. 9, 2007 (attempt to show discrepancy between treatment of other distributors under similar contracts not relevant to enforcement of plaintiff's contract).

*v. Walgreen* Co., 526 F.3d 641, 648-49 (10th Cir. 2008) (courts can deny unduly broad discovery requests); *Bradley v. ValMejias*, 2001 WL 1249339, at *6 (D. Kan. 2001)(party need not answer overly broad or unduly burdensome discovery).  The only specific ways in which Plaintiff alleges that the other franchisees were treated more favorably relate to delay in developing additional franchises, marketing requirements and payment of internet fees. *Fourth Amended Complaint* [#137] at ¶¶ 45-48.  The Third-Party Subpoenas request voluminous documents with no apparent connection to those issues, including those relating to: CMRA regulations, *any* transactions with the Defendants, Defendants' restated financial statements, charges for mailbox services, audits, franchise regulation requirements, Ron Clarke or Plaintiff, financial statements or royalty reports, invoices, and taxes.  As a result, the Third-Party Subpoenas appear to the Court to be a fishing expedition, or more probably, a search for ammunition to use in this particular war.  "Ammo recon" missions, like fishing expeditions, are rarely appropriate and uniformly discouraged. *McGee v. Hayes*, 43 Fed. Appx. 214, 217 (10th Cir. July 22, 2002)

I find that only documents relating to the non-party franchisees' Area Development Agreements, internet fees and advertising expenditures are relevant to the claims made by Plaintiff in this case.  Accordingly, Motion No. 76 is **granted** as to items 1, 2, 3, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, and **denied** as to items 4 and 5.

### V.  Plaintiff's Motion to Compel Responses to Discovery

Plaintiff asks the Court to compel Defendants to respond to written discovery requests in four general subject areas: (1) dealings and communications with other franchisees; (2) IOS's transactions with related persons and entities; (3) IOS's restated

financial statements; and (4) IOS's disputes with other franchisees and former officers, directors and employees of IOS. I have reviewed Plaintiff's Motion to Compel Responses to Discovery [#78], Defendants' Response in Opposition to Motion to Compel Responses to Discovery [#105], Plaintiff's Reply Brief in Further Support of its Opposed Motion to Compel Responses to Discovery [#118], the entire case file and the relevant law. For the reasons set forth below, the Motion is **GRANTED in part and DENIED in part**.

### A.     Arguments

Regarding the first subject matter set forth above, Plaintiff contends that the information sought is relevant to its fraud, fraudulent inducement and preferential treatment/breach of contract claims. *Motion* [#78] at 16, 18, 19. Defendants assert that none of the documents are relevant, and that the burden of producing them substantially outweighs their likely benefits. *Response* [#105] at 2.

Regarding the second and third subject matters, Plaintiff generally avers that the information sought is relevant to its fraud claims, as Plaintiff relied on Defendant's financial statements in signing the Franchise Agreement, and discovery to date "calls into question whether [Defendant Gregory] has siphoned money into alternate financial vehicles, such as a family trust." *Reply* [#118] at 5. Defendant IOS responds that it has already produced its Quick Book records showing all loans made by Defendant Gregory to IOS and TIO, and the transfer of funds between those entities. Defendants further aver that Plaintiff had opportunities to obtain any information in this regard during its depositions of IOS's bookkeeper and Defendant Gregory. *Response* [#105] at 7-8.

Regarding the fourth subject matter, Plaintiff avers that this information will either

"contradict representations made to [Plaintiff] and/or support the factual basis for [Plaintiff's] fraud-based claims. IOS tells different stories depending on the audience." *Motion* [#78] at 29. Defendant asserts that the information sought is not relevant, and that Plaintiff received five boxes of documents responsive to Request for Production No. 30 from non-party Dennis Ballen, thus production of those documents by Defendants would be duplicative. *Response* [#105] at 9.

### B. Analysis

I have carefully reviewed each and every disputed Interrogatory and Request for Production in light of Plaintiff's Fourth Amended Complaint, and for the reasons discussed at length above, find that the following seek information which is relevant and otherwise properly discoverable: Interrogatories 3, 11, 12, 15, 17, 19, 24, 29 and 30; and Requests for Production 4, 7, 15, 16, 19, and 33. Accordingly, Motion No. 78 is **granted** as to those requests for information. To the extent that the information sought in the interrogatories is contained in documents, Defendants shall specifically identify by bates-number the documents from which the information can be obtained. Fed. R. Civ. P. 33(d). Motion No. 78 is **denied** and Defendants need not further respond as to Interrogatories 2, 8, 20, 21, 23, 25 and 27; and Requests for Production 8, 10, 14, 20, 21, 28, 29, 30 and 31.

### VI. Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED as follows:

(1) Defendants' Motion for Protective Order [#71] is **DENIED.**

(2) Non-Party Witnesses' Motion for Protective Order [#76] is **GRANTED in part**

**and DENIED in part.**  The Non-Parties shall provide full and complete responses to items 4 and 5 of the subpoenas within two weeks of the date of this Order.

(3) Plaintiff's Motion to Compel Responses to Discovery [#78] is **GRANTED in part and DENIED in part.**  Defendants shall provide full and complete responses to Interrogatories 3, 11, 12, 15, 17, 19, 24, 29 and 30 and Requests for Production 4, 7, 15, 16, 19, and 33 within two weeks of the date of this Order.

The parties are advised that from this point forward no opposed discovery motions are to be filed with the Court until the parties comply with D.C.COLO.LCivR. 7.1(A).  If the parties are unable to reach agreement on a discovery issue after conferring, they **shall arrange a conference call** with Magistrate Judge Mix to attempt to resolve the issue.  Both of these steps must be completed before any contested discovery motions are filed with the Court.

BY THE COURT:

/s/ Kristen L. Mix
United States Magistrate Judge

Dated: May 29, 2009